1  DAN SIEGEL, SBN 56400
   MICHAEL SIEGEL, SBN 269439
2  SIEGEL & YEE
3  499 14th Street, Suite 300
   Oakland, CA  94612
4  Telephone: (510) 839-1200
   Facsimile: (510) 444-6698
5  dansiegel@siegelyee.com
6  michael@siegelyee.com

7  Attorneys for Plaintiff
   DAVID MORSE

**FILED**
OCT 1 2 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

E-filing

# UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

DAVID MORSE,

　　　　Plaintiff,

vs.

SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT (BART); and BART Deputy Police Chief DAN HARTWIG, sued in his official and individual capacities,

　　　　Defendants.

Case No. C12-5289 JSC ADR

**VERIFIED COMPLAINT**

(Civil Rights)

(Demand for Jury Trial)

　　　　Plaintiff complains against defendants SAN FRANCISCO BAY AREA RAPID TRANSIT and DAN HARTWIG (collectively, "BART"), as follows:

### INTRODUCTION

　　　　1.　　On September 8, 2011, veteran journalist DAVID MORSE was covering a political protest at the Powell Street Station of defendant SAN FRANCISCO BAY AREA RAPID TRANSIT (BART) when he was detained, along with other journalists and

---

*Morse v. BART, et al.*, No.
Verified Complaint

1

protestors, by BART police. Despite the facts that (a) Morse was displaying a press pass and holding two cameras, (b) numerous other Bay Area journalists were subsequently released without being arrested or charged, and (c) the supervising officer—defendant BART Deputy Police Chief DAN HARTWIG—had personal knowledge that Morse was a professional journalist, Hartwig ordered Morse's arrest, purportedly for trespassing at a public rail facility. As a result of Hartwig's misconduct, Morse was prevented from continuing his journalistic coverage of the political protests and was instead handcuffed for several hours and transported to a holding facility at San Francisco County Jail. Morse brings this action against BART and Hartwig for general, compensatory, and punitive damages, as well as costs of suit and attorneys' fees, based on defendants' unlawful acts constituting common law false arrest as well as violations of the First and Fourth Amendments of the United States Constitution.

## JURISDICTION

2. This action arises under a federal statute, 42 U.S.C. §1983, to redress actions under color of state law which violated the plaintiffs' constitutional rights. The Court has jurisdiction over this matter under 28 U.S.C. §1343. The Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. §1367.

## VENUE

3. Venue is proper in the Northern District of California because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## INTRADISTRICT ASSIGNMENT

4. A substantial part of the events or omissions giving rise to the claim occurred in the City of San Francisco in the County of San Francisco. Assignment to either the San Francisco or Oakland Division is proper pursuant to Local Rule 3-2(d).

---

*Morse v. BART, et al.*, No.
Verified Complaint                                                                 2

## PARTIES

5. Plaintiff DAVID MORSE is an experienced journalist and a resident of Oakland, California.

6. Defendant SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT (BART) is a public agency that operates a heavy-rail public transit and subway system that connects the counties of San Francisco, Alameda, Contra Costa, and San Mateo. As part of its operations, BART employs, trains, and supervises its own police force.

7. At all times relevant hereto, defendant DAN HARTWIG was Deputy Chief of the BART Police and acting in said capacity.

## STATEMENT OF CLAIM

8. Plaintiff David Morse is a veteran photo journalist. He has been a member of the San Francisco Bay Area Independent Media Center, or Indybay, since May 2004.

9. Indybay is an online newspaper, press association and wire service that generates and distributes edited audio, visual and print stories of local events for media outlets around the world and the general public. Indybay is associated with more than 150 Independent Media Center outlets worldwide, including sixty within the United States. The website receives between 20,000 and 30,000 page views on any given day. Indybay stories are syndicated by Google News. Indybay previously published a print periodical, *Fault Lines*, between June 2004 and June 2007.

10. David Morse began his journalism career with a monthly column in a music magazine in 1991. Since late 2002, he has focused his work on the documentation of social and political movements. Morse has covered hundreds of demonstrations and other public events, and his reportage often requires him to attend contentious protests with large police presences.

11. Morse is one of approximately a dozen members of the Indybay collective, a position he has held since May 2004. Morse holds a current Indybay press pass and has consistently published stories, photographs, video, and audio to Indybay since March 2004. He variously reports and edits for Indybay anywhere from twenty to forty hours a week.

12. Morse's reportage has been published by mass and independent media outlets alike. Morse has licensed protest footage to MSNBC, Current TV, and local television news affiliates such as ABC, NBC, and Fox, in California and elsewhere. Morse's documentation of the demonstrations that followed the January 1, 2009, shooting of Oscar Grant at the Fruitvale BART station were widely distributed.

13. Morse covered a wide array of Oscar Grant-related protests and demonstrations that occurred at BART stations, in the streets of Oakland, and at the BART headquarters. Morse wrote countless reports on the "Oscar Grant movement" for Indybay. Morse also covered related hearings on BART police at the state capital and attended numerous hearings on the creation of BART's new police oversight apparatus: the Civilian Review Board and Independent Auditor.

14. In the course of his journalistic endeavors, Morse became personally acquainted with leaders of the BART organization, including its Board directors, Auditor, and police officials. On one occasion, BART Board President Bob Franklin told Morse that he read every report that Morse wrote about BART, which Morse published under his pen name, "Dave Id." BART's public relations team and several administrators knew Morse on a first name basis.

15. In particular, Morse had a direct relationship with BART deputy chief Dan Hartwig. Hartwig and Morse spoke numerous times between 2009 and 2011, to discuss

the various demonstrations that occurred in connection with the Oscar Grant movement.

16. In response to the Oscar Grant shooting—in which a BART officer fatally shot a defenseless, unarmed passenger—defendant SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT (BART) agreed to 127 policy changes recommended by an independent auditor. Among these changes, BART agreed to provide crisis-intervention training for its police force.

17. Despite BART's commitments to make institutional changes, however, on July 3, 2011, a BART officer shot and killed Charles Hill at the Civic Center station in San Francisco. Although BART police claimed alternatively that Hill was mentally ill, intoxicated, and aggressive, agency records later showed that a BART officer killed Hill only 25 seconds after arriving on the scene.

18. In response to the Charles Hill shooting, BART facilities were hit by a new round of protests by various community groups, including a group calling itself "No Justice No BART." On multiple occasions in July and August of 2011, these groups held protests at BART facilities. On one or more occasions, BART was forced to slow the operation of its trains in response to the protests.

19. On August 11, 2011, BART officials responded to a potential protest by shutting down the cellular phone service in one or more BART stations. In response to this cell phone shutdown, various groups called for additional protests. Among the protesters were members of a notorious Internet organization, "Anonymous," who helped organize additional protests including actions conducted on August 15, August 22, and August 29.

20. As part of David Morse's work for Indybay, he reported on many of the BART protests in July, August, and September 2011. Morse also wrote various widely-circulated articles on the "No Justice No BART" campaign. When he entered the Powell Street BART station on September 8, 2011, Morse intended to cover the latest iteration of this campaign, an announced "Spare the Fare" BART protest.

21. Prior to the announced start of the protest, scheduled to begin at 5:00 p.m., BART decided to shut down a large section of the Powell Street station. This forced a crowd of protesters, media, police, and passengers, including Morse, into a relatively small section of the station.

22. At approximately 5:00 p.m. on September 8, BART police blocked the only remaining fare gates to the BART station. Then, BART police began to detain a number of demonstrators and media representatives. Morse was among those detained.

23. As a justification for its detention of Morse and the others, the BART police present stated that they were "investigating" the entire group for a violation of California Penal Code §369(i), which prohibits trespass at a public rail facility. This assertion by BART police was false, however, because Morse and the others were lawfully in a public facility, and had not been ordered to disperse.

24. Shortly after the detention of Morse and others, BART issued an order over the Powell Street station loudspeakers, declaring that anyone in Powell Street station should leave or risk arrest.

25. Despite the dispersal order, however, Morse and the other detained media and demonstrators were not permitted to exit.

26. After the dispersal order, a detained reporter from the San Francisco Bay Guardian, Rebecca Bowe, asked for a show of hands to see who among the detained

individuals worked as a journalist. At least a dozens hands went up, if not more. Among those detained along with Morse and Bowe was Vivian Ho, a reporter from the San Francisco Chronicle.

27. After the dispersal order and before the detainees had an opportunity to leave, BART deputy police chief Dan Hartwig assembled a line of police in riot gear, and began selecting individuals for arrest. Hartwig selected Morse as the first arrestee.

28. At the time of his arrest, Morse was wearing his Indybay press pass around his neck. He was holding a camera in each hand.

29. BART officer Coduti roughly grabbed Morse from the crowd of detainees. He placed handcuffs tightly around Morse's wrists, and took Morse to the BART police substation within the Powell Street station.

30. Immediately upon placing Morse in a small office within the police substation, Officer Coduti asked Morse if he was "Dave Id." By asking this question, Coduti revealed his knowledge that Morse uses the nom de plum "Dave Id" in his articles published on Indybay.

31. BART detained Morse at the Powell Street substation for more than two hours, refusing to remove Morse's handcuffs. Then, BART Officer Emery Knudtson subjected Morse to a physical search.

32. While Morse was detained at the substation, deputy chief Hartwig visited the location where Morse was held on two separate occasions. Hartwig denied that Morse had been singled out for arrest. Hartwig claimed that BART did not have to issue a dispersal order before making arrests. Hartwig acknowledged that Morse is a working journalist, and falsely claimed that other journalists had been arrested as well.

33. From Powell Street, BART police took Morse to San Francisco County Jail. There, Morse was cited with an alleged violation of Penal Code §369(i), and released.

34. BART police arrested over 20 individuals on September 8, 2011. On information and belief, Morse was the only credentialed journalist arrested.

35. As a result of BART's arrest of Morse, Morse was physically prevented from covering and being an eyewitness to further arrests and events that occurred at the Powell Street station following his arrest. Morse later learned that BART police had handcuffed other journalists and encouraged San Francisco police, on false pretense, to confiscate the City-issued press passes belonging to arrested media members.

36. On June 4, 2012, nearly nine months after his arrest, the San Francisco County Superior Court sustained a demurrer filed by Morse, and dismissed all charges against him. The District Attorney did not file amended charges.

**FIRST CLAIM FOR RELIEF**
(False Imprisonment/False Arrest)
(BART and Hartwig)

37. Plaintiff realleges and fully incorporates herein paragraphs 1-36, above.

38. On February 28, 2012, Morse timely presented to BART a claim for damages based upon his unlawful arrest. On April 13, 2012, BART issued a notice of rejection of Morse's claim.

39. By virtue of the foregoing, BART subjected Morse to false imprisonment and false arrest. Specifically, BART intentionally deprived Morse of his freedom of movement by use of threats of force and without Morse's consent, and BART later subjected Morse to arrest without warrant or justification. BART's misconduct directly and substantially caused Morse to suffer actual harm.

**SECOND CLAIM FOR RELIEF**
(Unlawful Seizure, 42 U.S.C. §1983)
(Hartwig)

40. Plaintiff realleges and fully incorporates herein paragraphs 1-39, above.

41. By virtue of the foregoing, defendant Hartwig, acting under color of state law, intentionally violated Morse's rights of liberty, protected by the Fourth Amendment of the United States Constitution, by arresting him without a warrant and without probable cause.

42. By virtue of the foregoing, defendant Hartwig, acting in his official capacity, intentionally violated Morse's right to be free of unreasonable search and seizure protected by the Fourth Amendment to the Constitution of the United States of America. As a result of Hartwig's conduct, Morse suffered harm.

**THIRD CLAIM FOR RELIEF**
(Retaliation Based on First Amendment Conduct, 42 U.S.C. §1983)
(Hartwig)

43. Plaintiff realleges and fully incorporates herein paragraphs 1-42, above.

44. By virtue of the foregoing, defendant Hartwig, acting under color of state law, intentionally violated Morse's journalistic rights, protected by the First Amendment to the United States Constitution, by targeting him for arrest while he was reporting on a political protest.

45. On information and belief, defendants Harwtig was substantially motivated by Morse's protected activity of reporting, as a professional journalist, on instances of abuse and misconduct by BART police personnel. Hartwig's conduct was designed to deter Morse's protected conduct, and his acts would likely have deterred a person of ordinary firmness from engaging in that protected activity.

46.   By virtue of the foregoing, defendant Hartwig, acting in his official capacity, intentionally violated Morse's First Amendment rights to work as a journalist and report on events of public concern, causing Morse direct harm.

## DAMAGES

47.   As a result of the actions of defendants, Morse has been injured and suffered damages as follows:

(a)   He was wrongfully subjected to several hours of false imprisonment and false arrest;

(b)   He suffered emotional distress, embarrassment, and humiliation;

(c)   His has suffered loss of reputation; and

(d)   He was prevented from reporting on September 8, 2011.

## PUNITIVE DAMAGES

48.   In taking the actions alleged above, defendant Hartwig acted willfully, intentionally, and maliciously in order to subject David Morse to false arrest and prevent him from reporting on political protests against BART misconduct, all without lawful justification and because of Morse's history of reporting. Accordingly, Morse is entitled to punitive damages in this action.

## PRAYER

WHEREFORE, David Morse prays for judgment against defendants BART and Hartwig, and requests that this Court grant him relief as follows:

(1)   Compensatory damages;

(2)   General damages;

(3)   Punitive damages;

---

*Morse v. BART, et al.*, No.
Verified Complaint                                                                                     10

(4) Attorneys' fees;

(5) Costs of the suit; and

(6) Such other relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

In accordance with Federal Rules of Civil Procedure, Rule 38(b), and Northern District Local Rule 3-6(a), David Morse hereby demands a jury trial.

This claim is timely made, and is presently within jurisdictional time limits to present claims.

Dated: October 12, 2012

SIEGEL & YEE

By: _____
Michael Siegel

Attorneys for Plaintiff
DAVID MORSE

## VERIFICATION

I, DAVID MORSE, declare as follows:

I am a plaintiff in this action. I have read the foregoing Verified Complaint and know the contents thereof. The same is true of my personal knowledge except where stated on information and belief and, as to such matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 12, 2012, at Oakland, California.

_____
David Morse