# EXHIBIT D TO
# ALLEN DECLARATION

1 UNITED STATES DISTRICT COURT FOR THE

2 NORTHERN DISTRICT OF CALIFORNIA

3 ---oOo---

4 DAVID MORSE,

5     Plaintiff,

6 vs.     No. C12-5289 JSC

7 SAN FRANCISCO BAY AREA RAPID
TRANSIT DISTRICT (BART); and BART
8 Deputy Police Chief DAN HARTWIG,
sued in his official and
9 individual capacities,

10     Defendants.
_____/
11

12

13

14

15 DEPOSITION OF SHANE R. CODUTI

16 (Pages 1 to 61, inclusive)

17

18 Taken before SANDRA M. LEE

19 CSR No. 9971

20 November 5, 2013

21

22

23 **Aiken Welch Court Reporters**
**One Kaiser Plaza, Suite 505**
**Oakland, California 94612**
24 **(510) 451-1580/(877) 451-1580**
**Fax: (510) 451-3797**
25 **www.aikenwelch.com**

1 practices?
2     A. No. Are you talking directly involving the
3 cell phone incident?
4     Q. Were you advised to alter your practices in any
5 way?
6     MR. ALLEN: Overbroad, vague.
7 BY MR. SIEGEL:
8     Q. To the best of your ability, you can answer.
9     MR. ALLEN: Same objections; overbroad.
10     Go ahead and answer. I'll tell you if you
11 can't answer.
12     THE WITNESS: From my memory, no one gave me
13 any direct way of altering my practices.
14 BY MR. SIEGEL:
15     Q. Before the protest in question, and I'm
16 referring to September 8th, 2011 --
17     A. Okay.
18     Q. -- had you seen David Morse before?
19     A. Yes.
20     Q. And on what occasions?
21     A. I believe, if my memory serves me correctly, it
22 was either the week before or the week before that at
23 the board meeting for BART at Lakeside.
24     Q. Do you recall what was being discussed at that
25 board meeting?

1    A.  There was always general stuff being discussed,
2 but I know when I saw Mr. Morse, it was during the
3 comment section where people can stand up and make
4 comments towards the BART board.
5    Q.  Do you remember what the substance of his
6 comments was?
7    A.  I know there were negative comments criticizing
8 BART.  I can't remember the direct -- something about he
9 worked at some youth facility and was able to take
10 weapons out of youths' hands, so why can't police
11 officers just do that when they handle something --
12 something to that.  I can't remember the exact wording.
13    Q.  But you do remember the substance of --
14    A.  A little bit before I walked out of the room,
15 yes.
16    Q.  And why did you walk out of the room?
17    A.  Because we were actually rotating positions.
18 And so when I saw him is when I was coming through the
19 room, and I walked out.
20    Q.  Did you know his true name at that point?
21    A.  No.
22    Q.  And did you know his identity as a journalist?
23    A.  No.
24    Q.  When did you learn that Mr. Morse was a
25 journalist?

1  place because those people will be there.
2        Q.  Do you recall that Krystoff was identified as
3  an agitator?
4        A.  I don't recall directly that he was.  He may
5  have been, but I don't remember that term being used
6  when I was sitting there.
7        Q.  In your stack if you could look at Exhibit 4,
8  please.
9        A.  Yes.
10       Q.  Officer, do you recognize this document?
11       A.  Yeah.  I believe I do.  This was something that
12  was handed out to us.
13       Q.  This was handed out to you during the briefings
14  that day?
15       A.  It was passed around or shown.  I've seen this
16  before.
17       Q.  Do you remember who gave it to you?
18       A.  Uh-uh.  No.
19       Q.  Is this a BOLO?
20       A.  No.  It's not a BOLO.
21       Q.  How is a BOLO different from this document?
22       A.  A BOLO is usually people that are wanted.
23  Usually have some criminal tie that they're going to be
24  wanted.  You need to contact them for a specific reason
25  because they're going to be wanted for a crime.  There's

1  nothing here that says to contact.  There's nothing here
2  that says they're wanted for something or that charges
3  are going to be sought on them for something.
4      Q.  How do you interpret this document?
5      A.  This is more like an informational flier or
6  "for your information only" kind of thing.
7      Q.  Was it your understanding that if you saw these
8  people at the protest, you should focus on them?
9      A.  Not focus.  Just like I said in my previous
10 statement, it was -- from what I understand, this was
11 linked to if you see these people, that's where the
12 protest is going to be.
13     Q.  Do you recall a document like this ever being
14 distributed at a protest -- at a briefing before?
15     A.  I don't remember.  There's a lot of documents
16 that are given at briefings for all sorts of things.
17 Could or could not.
18     Q.  Have you ever seen Christopher Cantor
19 identified in a document like this before?
20     A.  I don't recall.
21     Q.  How about Dave Id?
22     A.  I don't recall either him -- ever seeing him
23 before in a document.
24     Q.  Have you ever seen a journalist other than
25 David Id identified in a document like this?

1        REPORTER'S CERTIFICATE

4    I, SANDRA M. LEE, a Shorthand Reporter, State of
5    California, do hereby certify:
6        That SHANE R. CODUTI, in the foregoing
7    deposition named, was present and by me sworn as a
8    witness in the above-entitled action at the time and
9    place therein specified;
10       That said deposition was taken before me at said
11   time and place, and was taken down in shorthand by me, a
12   Certified Shorthand Reporter of the State of California,
13   and was thereafter transcribed into typewriting, and
14   that the foregoing transcript constitutes a full, true
15   and correct report of said deposition and of the
16   proceedings that took place;
17       That before completion of the proceedings,
18   review of the transcript was not requested.
19       IN WITNESS WHEREOF, I have hereunder subscribed
20   my hand this 19th day of November 2013.

24       _____
         SANDRA M. LEE, CSR NO. 9971
25       State of California