1  DALE L. ALLEN, JR., SBN 145279
   KEVIN P. ALLEN, SBN 252290
2  ALLEN, GLAESSNER & WERTH
   180 Montgomery Street, Suite 1200
3  San Francisco, California 94104
   Telephone:   (415) 697-2000
4  Facsimile:   (415) 813-2045
   Email: dallen@lowball.com
5  Email: kallen@lowball.com

6  Attorneys for Defendants
   SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT
7  AND BART DEPUTY POLICE CHIEF DAN HARTWIG

8

9                   UNITED STATES DISTRICT COURT

10              FOR THE NORTHERN DISTRICT OF CALIFORNIA

11 | DAVID MORSE,                              | Case No. C12-5289 JSC (DMR)
12 |           Plaintiff,                      | **DEFENDANTS' REPLY FOR SUMMARY JUDGMENT/ADJUDICATION;**
13 |     vs.                                   | **MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)**
14 | SAN FRANCISCO BAY AREA RAPID
   | TRANSIT DISTRICT (BART); and BART        | Date:  February 6, 2014
15 | Deputy Police Chief DAN HARTWIG, sued     | Time:  9:00 a.m.
   | in his official and individual capacities,| Courtroom:  F, 15th Floor (San Francisco)
16 |                                           | Judge: Hon. Jacqueline Scott Corley
   |           Defendants.                     |
17 |                                           | Trial Date:   March 31, 2013

18

-i-
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

W:\Dale's Files\1752\SF0232\MSJ\Reply\Reply-MPA.docx                    Case No: C12-5289 JSC (DMR)

TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ..................................................................................................................1

II. PLAINTIFF'S UNSUBSTANTIATED FACTS....................................................................1

III. LEGAL ARGUMENT ...........................................................................................................2

    A. Retaliation Claims Fails Due to No Speech Motivation and Qualified Immunity.............2

        1. Hartwig Not Motivated by Plaintiff's Speech .......................................................2

            a. Courts Look at All Evidence to Draw an Inference; Do Not Make Credibility Determinations ........................................................................3

            b. Hartwig's Testimony Does Not Show Retaliatory Animus ......................4

            c. BART Procedures Do Not Show Retaliatory Animus ..............................6

            d. Inference Shows No Animus......................................................................8

        2. Hartwig Entitled to Qualified Immunity ..............................................................9

    B. Federal Unlawful Arrest Claim Fails Due to Probable Cause and Qualified Immunity. ..........................................................................................................................10

        1. Probable Cause to Arrest ....................................................................................10

        2. Deputy Chief Hartwig Entitled to Qualified Immunity......................................11

    C. State-law False Arrest Fails Due to State-law Immunity ................................................12

    D. No Punitive Damages ......................................................................................................12

IV. RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTIONS .......................................12

V. EVIDENTIARY OBJECTIONS ..........................................................................................13

VI. CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ---- 4, 5

*Ashcroft v. al-Kidd* — U.S. —, 131 S. Ct. 2074 (2011) ---- 2, 9

*Hartman v. Moore* 547 U.S. 250 (2006) ---- 4

*Reeves v. Sanderson Plumbing Products, Inc.*, 550 U.S. 133 (2000) ---- 3

*Reichle v. Howards*, 132 S. Ct. 2088 (2012) ---- 9

*Wright v. W.*, 505 U.S. 277 (1992) ---- 3

**UNITED STATES NINTH CIRCUIT COURT OF APPEAL**

*Beck v. City of Upland*, 527 F. 3d 853 (9th Cir. 2008) ---- 3, 8

*Bryan v. MacPherson*, 630 F.3d 805, 833 (9th Cir. 2010) ---- 11

*Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916 (9th Cir. 2012) ---- 2

*Swarner v. United States*, 937 F.2d 1478, 1483 (9th Cir. 1991) ---- 3, 8

*United States v. Chromy*, 437 F. App'x 593 (9th Cir. 2011) ---- 3, 8

**CALIFORNIA PENAL CODE**

§ 369i ---- passim

## I. INTRODUCTION

Defendants' Motion for Summary Judgment/Adjudication should be granted because Plaintiffs' Opposition fails to create a genuine issue of material fact. Defendants also enjoy qualified immunity.

## II. PLAINTIFF'S UNSUBSTANTIATED FACTS

Under Local Rule 7-3(c), "[a]ny evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum." Defendants object to several of the facts contained in Plaintiff's Opposition. They should be disregarded under Local Rule 7-5(A), which states: "[f]actual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record." The facts below are unsubstantiated.

| Plaintiff's Fact | Reason It is Unsubstantiated |
|---|---|
| "He publicized facts concerning the killing of Hill, including facts that indicated the shooting was unjustified." (*Pl.'s Opp'n*, 9:9-10). | As matter of law, the shooting of Mr. Hill has been found lawful. See *Hill v. Bay Area Rapid Transit Dist.*, C-12-00372 DMR, 2013 WL 5272957 (N.D. Cal. Sept. 18, 2013) |
| "When asked if he was hoping to arrest David Morse, Fairow testified, 'Not necessarily.'" (*Pl.'s Opp'n*, 10:13-14). | Misstates testimony. Plaintiff neglects to provide the full context of the quote, leaving the mistaken impression there was some kind of conspiracy against Plaintiff. The context quote shows innocuous nature of Fairow's comment:<br><br>14 Q. Other than this document, did you highlight<br>15 David Morse in any other way in advance of the protest?<br>16 A. **Not that I recall other than maybe at briefings**<br>17 **talking about if either one of them were seen, they need**<br>18 **to alert us as soon as they were seen.**<br>19 Q. Were you hoping to arrest Mr. Morse?<br>20 A. **Not necessarily. I was hoping the protest**<br>21 **would be just that, a protest, that there wouldn't be**<br>22 **any law-breaking.**<br>23 Q. Were you hoping to learn his true name?<br>24 A. **I don't know that I gave that any consideration**<br>25 **at the time. He hadn't committed any criminal acts, so**<br>1 **I really wouldn't be interested in that.**<br><br>(*Fairow Dep.* 43:14-44:1). |
| "In fact, commanders specifically discussed how Morse and Cantor might be subject to arrest. As Dam testified, 'the order was we have to see what they're doing … if they're inciting a riot or acting in a criminal matter, they were to be arrested." (*Pl.'s Opp'n*, 11:2-6). | Misstates testimony. As phrased, Plaintiff raises the specter that BART police plotted to arrest Plaintiff. In reality, the Plaintiff was only to be arrested if broke the law -- just like any other person at the protest. (*Dam Dep.* 34:4-9). Moreover, Officer Dam categorically rejected the notion that he anticipated Plaintiff's arrest during the protest. (*Dam Dep.* 31:19-21). |

-1-
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

W:\Dale's Files\1752\SF0232\MSJ\Reply\Reply-MPA.docx        Case No: C12-5289 JSC (DMR)

| | |
|---|---|
| "BART utilized undercover police officers to monitor David Morse during the September 8, 2011 protest." (*Pl.'s Opp'n*, 11:7-8). | Unfounded. The testimony cited by Plaintiff -- page 44 of the Fairow deposition and page 30 of the Dam deposition -- only states that undercover <u>may</u> have been used during the protest. It does not state they were definitively used or that they were assigned to specifically monitor Plaintiff. |
| "After Morse's arrest, Chief Rainey contacted the San Francisco District Attorney and expressed his desire that he be prosecuted for 'illegal behavior as far as disrupting our operations and threatening public safety.'" (*Pl.'s Opp'n*, 14:5-8). | Misstates testimony. Chief Rainey never contacted the DA's Office about Plaintiff's prosecution. (*Rainey Dep.* 39:24-40:1). He specified denied doing so. (*Id.*) He only contacted the DA's Office about prosecuting *everyone* arrested that day. (*Id.*, at 40:12-21). |
| "Hartwig testified that Morse was arrested for failure to disperse." | Plaintiff provides no citation for this assertion. Deputy Chief Hartwig repeatedly testified he arrested Plaintiff for violation of Penal Code § 369i (*Hartwig Dep.* 86:7-10; 109:17-24). |

## III. LEGAL ARGUMENT

### A. Retaliation Claims Fails Due to No Speech Motivation and Qualified Immunity

Defendants moved to dismiss Plaintiff's third cause of action (retaliation under the First Amendment) on two grounds: (1) no speech-motivated arrest; and (2) qualified immunity.

#### 1. Hartwig Not Motivated by Plaintiff's Speech

Plaintiff does not dispute that *Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) governs his First Amendment retaliation claim. (Docket No. 65, *Pl.'s Opp'n*, 26:19-27:14). He must show that Deputy Chief Hartwig's actions deterred or chilled Plaintiff's speech and that the speech was the substantial or motivating factor in Hartwig's conduct. *Lacey, supra*, at 916. Plaintiff must possess facts proving that retaliatory animus was the but-for cause of his alleged speech deprivation. *Id.*, at 917.

Defendants' moving papers analyzed the wealth of evidence in this case, including: (1) the professional and cordial relationship between Plaintiff and Hartwig; (2) no prior animosity, threat, or intimidation from Hartwig to Plaintiff; (3) Hartwig's respectful, civil treatment of Plaintiff post-arrest; (4) no statements by Hartwig or other officers that Plaintiff was arrested due to his speech; (5) Hartwig never felt pressure from negative news coverage of BART; and (6) he was he upset when Plaintiff's criminal charges were dropped. (Docket No. 54, *Defs. Moving Papers*, 13:28-15:1).

Tacitly acknowledging this evidence and its lack of retaliatory animus, Plaintiff's Opposition does not address it. Rather, Plaintiff requests the Court to infer retaliatory animus. This request is

telling. Plaintiff does not offer any direct evidence because he cannot. As admitted in his own deposition, he has no evidence he was arrested for his BART-critical articles.

Plaintiff asks for an animus inference based upon Hartwig's allegedly inconsistent testimony and his alleged departure from BART procedures. This request should be denied. The only inference from the evidence is no retaliatory animus.

### a. Courts Look at All Evidence to Draw an Inference; Do Not Make Credibility Determinations

Plaintiff relies upon several cases for his argument. They are either peripheral or unrelated.

He cites *Beck v. City of Upland*, 527 F. 3d 853 (9th Cir. 2007) for the proposition that retaliatory motive may be shown through inference. Defendants agree. In drawing inferences, however, courts do not simply look at the plaintiff's evidence. Rather, they examine all the evidence in a case. *United States v. Chromy*, 437 F. App'x 593 (9th Cir. 2011) ("summary judgment appropriate when, reviewing the record as a whole and drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact."). The restriction to reasonable inferences comes into particular play with circumstantial evidence. *Swarner v. United States*, 937 F.2d 1478, 1483 (9th Cir. 1991) ("[i]n drawing inferences from the facts on summary judgment, the court must favor the nonmoving party. Yet even on summary judgment the court may decline to draw an implausible inference from ambiguous circumstantial evidence.").

Plaintiff references *Reeves v. Sanderson Plumbing Products, Inc.*, 550 U.S. 133 (2000) for the premise that a fact-finder may consider a party's dishonesty about a material fact as affirmative evidence of guilt. *Reeves* is inapposite. The language cited by Plaintiff concerns the fact-finding stage, when a jury weighs evidence and decides guilt. It does not address motions for summary judgment. See *Wright v. W.*, 505 U.S. 277 (1992), the case from which Reeves obtained its holding. *Wright* -- not referenced or discussed by Plaintiff -- concerned an appeal on a criminal conviction. *Wright, supra*, at 280-284. In discussing the evidence the jury could consider in finding guilt, the *Wright* Court referenced the criminal defendant's dishonesty. (*Id*, at 296).

*Reeves* and *Wright* are inapplicable to motions for summary judgment. The Supreme Court has made clear that "at the summary judgment stage the judge's function is not himself to weigh the

-3-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

W:\Dale's Files\1752\SF0232\MSJ\Reply\Reply-MPA.docx     Case No: C12-5289 JSC (DMR)

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Plaintiff also discusses probable cause and its relationship to retaliatory animus. He cites *Hartman v. Moore* 547 U.S. 250 (2006). (*Pl.'s Opp'n*, 27:7-14). *Hartman* did not hold that a lack of probable cause automatically shows but-for retaliation. *Hartman, supra*, at 265 ('it is not necessarily dispositive: showing an absence of probable cause may not be conclusive that the inducement succeeded."). *Hartman* only held that lack of probable cause is, effectively, a multiplier: it reinforces any retaliation evidence that may exist. (*Id.*, at 261). The opinion in no way relieves Plaintiff of his requirement to provide retaliatory animus evidence.

        **b.**     **Hartwig's Testimony Does Not Show Retaliatory Animus**

Plaintiff claims that Hartwig gave inconsistent testimony as to: (1) who arrested Plaintiff; (2) whether he attended BART's pre-protest briefing on September 8, 2011; and (3) the probable cause for Plaintiff's arrest. (*Pl.'s Opp'n*, 27:15-23). He argues that because Hartwig's credibility is called into question, this is a reasonable inference of retaliatory motive. (*Id.*)

Plaintiff argument is incorrect as a matter of law. Per *Anderson*, the Court may not make credibility determinations at the summary judgment stage. Rather, it examines the circumstantial evidence presented by Plaintiff and decides whether -- in light of all the evidence in the case -- Plaintiff's evidence creates a reasonable inference of retaliatory animus. It does not.

Deputy Chief Hartwig did not give inconsistent testimony as to who arrested Plaintiff. He admitted ordering that Plaintiff be removed from the crowd. (*Defs. Moving Papers*, 13:10-13). Whether or not Hartwig personally understood this to mean that -- under 42 U.S.C. § 1983 -- he was deemed responsible for arresting Plaintiff is an academic exercise. The Deputy Chief knew and intended Plaintiff to be arrested for violation of the law that Hartwig observed. Moreover, Defendants do not dispute Hartwig's involvement in the arrest. They have never contested his status as an integral participant. Defendants' moving papers for the instant motion focus exclusively on: (1) the existence of probable cause of the arrest: (2) lack of retaliatory animus; and (3) qualified immunity. (*Defs. Moving Papers*, 15:19-21; 22:5-7). Plaintiff cannot create a disputed fact by claiming something is disputed when it is not.

As to the Deputy Chief's attendance the pre-protest meeting, he has a different recollection from Officers Dam and Coduti. The test on summary judgment, however, is not whether *any* disputed fact exists. It is the existence of a disputed *material* fact. *Anderson, supra*, at 247-248 ("the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") In determining materiality, *Anderson* instructs that "the substantive law will identify which facts are material." (*Id*, at 248). The high court continued: "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." (*Id.*) The substantive law on retaliatory animus is that it requires a person's speech to be the but-for cause of his/her arrest. Whether or not Deputy Chief Hartwig attended a pre-protest meeting does not affect the outcome of this legal test. Accordingly, it does not create genuine issue of material fact on retaliatory animus.

Plaintiff asserts that Deputy Chief Hartwig gave inconsistent testimony as to "what probable cause existed for the arrest." (*Pl.'s Opp'n*, 27:19-20). He does not elaborate on this assertion; he just uses the aside "as discussed above." (*Id*, at 27:17-20). Plaintiff's assertion is incorrect. Deputy Chief Hartwig did not give inconsistent testimony on Plaintiff's arrest. He repeatedly stated the arrest was because he observed Plaintiff walk with the crowd and block the fare gates and patrons. (*Defs. Moving Papers*, 12:13-17). Hartwig categorized these things as being an "active participant." (*Id.*, at 18-20).

Plaintiff's assertion that Deputy Chief Hartwig arrested him for failing to disperse is unfounded (see objection to unsubstantiated facts, above). Hartwig observed all the conduct to make Penal Code § 369i arrests before (or during) the dispersal notice, not afterwards. (*Hartwig Dep.* 23:23-24:6). Assuming, *arguendo*, that Plaintiff was also arrested for failure to disperse in addition to violation of Section 369i, that does not undercut the 369i arrest. It just means there were multiple grounds to seize Plaintiff. Moreover, here's the context for any dispersal-related arrest. The Deputy Chief observed Plaintiff violate Penal Code § 369i. *Defs. Moving Papers*, 13:12-22). He then walked through the crowd, told people to leave, and said they would be subject to arrest if they stayed. (*Id*) When Plaintiff did not leave, he was arrested. The fact that Hartwig was lenient and gave Plaintiff an opportunity to leave does not change the fact he observed probable cause for Section 369i.

Plaintiff's other references -- that he was arrested for interacting with Mr. Cantor, or for creating a worse situation -- are also without merit. (*Pl.'s Opp'n*, at 17:10-15; 18:9-17). Deputy Chief Hartwig never testified he arrested Plaintiff for interacting with Mr. Cantor. Rather, when asked what distinguished Plaintiff from Chronicle reporter Vivian Ho, Hartwig explained that Plaintiff "was an active participant in the protest. He was actively blocking fare gates, actively marching with the crowd, actively interacting with Mr. Cantor, who I determined through my experience with this group was the active leader of the crowd." (*Hartwig Dep.* 39:10-15). This is consistent with Harwig's deposition testimony. Similarly, Hartwig never testified he arrested Plaintiff for creating a worse situation. Rather, when asked during his Internal Affairs interview what separated Plaintiff from others, he stated: "I stopped and looked at the circle and I witnessed Mr. Cantor and Mr. Id in conversation, as I've seen them many times over these demonstrations. Um -- when their conversations stopped, I stepped back and I looked and the people in the inner circle around them after this conversation completed suddenly became energized and were motivated to challenge the officers that were trying to hold the circle." (*Siegel Dec.*, Ex. B(9), at 20). He said this right before talking about removing Plaintiff and Cantor from the circle first. Deputy Chief Hartwig elaborated on this decision during deposition: after Plaintiff and Cantor were arrested first, the crowd calmed down. (*Hartwig Dep.* 104:21-105:5). In short, Hartwig's statements concern the *timing* of Plaintiff's arrest. Why Hartwig chose to arrest Plaintiff at a given time is separate inquiry from the probable cause for that arrest. Plaintiff mistakenly blurs the two.

    c. **BART Procedures Do Not Show Retaliatory Animus**

Plaintiff also asserts that Hartwig's retaliatory animus may be inferred by his failure to abide by certain BART policies. (*Pl.'s Opp'n*, 27:24-28:21). His assertions are misplaced. He first references the lack of a media staging area during the protest. He never references any BART Policy number; Defendants cannot confirm that any such policy exists. Assuming, *arguendo*, it did exist, the lack of an area is irrelevant here. As Plaintiff acknowledges, BART previously announced protestors could exercise their First Amendment rights in the free area of BART stations (so long as they did not interfere with transit operations). (*Pl.'s Opp'n*, 14:12-16). As the protest was in the free area, media did not need permission to attend or be present. Moreover, Plaintiff fails to explain how and why the failure to specially designate a media area creates an inference his arrest was speech-based. Plaintiff must

-6-
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)
W:\Dale's Files\1752\SF0232\MSJ\Reply\Reply-MPA.docx  Case No: C12-5289 JSC (DMR)

show the causal link in his evidence: he does not.

Plaintiff second argument -- that BART did not issue proper dispersal orders -- is a red herring. Under BART Policy 459.4, such orders are to be read prior to a mass, simultaneous arrest of protest for failure to disperse (Penal Code § 409). Because Plaintiff was arrested for a different crime, Penal Code § 369i, the alleged failure to read a proper dispersal order is irrelevant.

Plaintiff also asserts that BART treated him differently from other journalists. This is untrue. Deputy Chief Hartwig repeatedly recognized Plaintiff as a journalist, and drew no substantive difference between him and other journalists. (*Hartwig Dep.* 41:15-19; 84:1-5; 118:5-10). Stylistically, Hartwig only referenced the different methods of journalism: traditional media (e.g. newspapers, television, radio) versus digital media (e.g. Plaintiff and IndyBay). (*Id*, at 38:9-39:4). Hartwig distinguished these stylistic differences as "mainline" journalism and "alternative" journalism. (*Id.*) Plaintiff never explains how or why he was treated differently from other journalists. Assuming he claims his arrest differentiated him, Plaintiff was only arrested after Hartwig observed him violate Section 369i. Hartwig did not observe Chronicle reporter Vivian Ho violate the statute; he did not observe other journalists engage in the same conduct as Plaintiff (*Id.*, at 37:6-21; 115:24-116:1).

Plaintiff complains he was arrested (rather than cited and released) for his infraction. Penal Code § 369i is a misdemeanor, not an infraction. While BART Policy 459.5 generally provides for cite-and-release of protest-related arrests, the Policy also contains various exceptions, including reasonable likelihood that the offense(s) would continue or resume. Hartwig previously explained how -- post-encirclement -- the crowd's resistance to the officers operated in tandem with Plaintiff and Cantor's conduct. He also testified how that resistance ended once both were arrested. An exception to the "cite-and-release" policy applied. Plaintiff also ignores that multiple 369i arrests were made the day of the protest. He was not singled-out; he was treated like everyone else who violated Penal Code § 369i. Plaintiff also fails to establish the causal link between his arrest and an inference of retaliatory animus.

Plaintiff also claims that: (1) Hartwig surveilled him; (2) referred to him as a subject; (3) discussed how he might be legally detained; and (4) unjustly arrested him. (*Pl.'s Opp'n*, 28:3-7). Plaintiff was arrested pursuant to probable cause (violation of Penal Code § 369i). The Deputy Chief did not perform the acts alleged in (1)-(3); Plaintiff does not offer evidence he did. (*Id*, at 28:3-18).

Hartwig is only liable under 42 U.S.C. 1983 for his own conduct. His is not liable for the acts of others. Moreover, Plaintiff's inclusion on the informational flyer was not insidious. As explained by multiple officers, it was so BART could adequately and efficiently deploy its police force.

### d. **Inference Shows No Animus**

Plaintiff cites *Beck* for the proposition that retaliatory motive may be shown through: history of conflict between the parties; unjustifiably and uncommonly harsh treatment; and defendants' past statements. (*Pl.'s Opp'n*, 26:22-26). But he failed to undertake this analysis. If he had, he would have seen no retaliatory motive. Plaintiff and Deputy Chief Hartwig had no history of conflict. On the contrary, they had a cordial, professional relationship with occasional banter. There are no past statements from Hartwig to indicate retaliation. On the contrary, he explicitly stated he arrested Plaintiff for 369i, and he never belittled or spoke derogatorily to Plaintiff while he was in custody. Plaintiff admitted that Hartwig never said the arrest was due to his speech (and further admitted he had no evidence of such retaliation). Plaintiff also received fair treatment. He was arrested for 369i (as were others), was treated respectably by Hartwig while in custody, and received all his personal property back, intact, after his release from jail.

Defendants have brought forth extensive direct evidence that Plaintiff's arrest was <u>not</u> speech-related: Plaintiff's admissions and statements on the subject, as well as Hartwig's statements. They have also produced extensive circumstantial evidence, including: (1) Hartwig felt no pressure from BART's negative new coverage; (2) Hartwig was not upset by the dropping of Plaintiff's criminal charges; and (3) the return of all Plaintiff's incident-related photos and video (nothing deleted or erased). Plaintiff's Section 369i arrest also followed BART's pre-protest intelligence (threat to block the fare gates) and a pre-protest warning to not to block the gates or risk arrest (which Plaintiff acknowledged hearing).

In response, Plaintiff offers no direct evidence and limited circumstantial evidence. That circumstantial evidence he did provide was taken-out-of-context, incorrect, irrelevant, and/or failed to show a causal link to Plaintiff's arrest. Accordingly, after examining the whole record as required by *Chromy* and *Swarner* require, it is unreasonable to infer that Deputy Chief Hartwig arrested Plaintiff because of his speech. Hartwig is entitled to summary adjudication of Plaintiff's third cause of action.

-8-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

W:\Dale's Files\1752\SF0232\MSJ\Reply\Reply-MPA.docx    Case No: C12-5289 JSC (DMR)

### 2. Hartwig Entitled to Qualified Immunity

Defendants also moved to dismiss the third cause of action due to qualified immunity. They specified two separate grounds: (1) every reasonable officer would <u>not</u> have known that Hartwig's conduct constituted animus towards Plaintiff's speech; and (2) every reasonable officer would <u>not</u> have known that First Amendment retaliation claims may lie where probable cause exists for the arrest.

In support of their first ground, Defendants discussed five Ninth Circuit cases. These cases depict the kind of conduct that is required to constitute retaliatory animus. None of them remotely resemble the fact pattern here. In response, Plaintiff did not discuss nor dispute any of the cases. (*Pl.'s Opp'n*, 28:24-29:13). He did <u>not</u> claim, for example, that under Ninth Circuit precedent every reasonable officer would have known Hartwig's conduct constituted retaliatory animus. (*Id*) Plaintiff only argued that a disputed material fact exists as to whether Plaintiff was arrested for his speech. (*Id.*)

Plaintiff's argument fails because there is no reasonable inference of retaliatory animus (see III(A)(1), above). Moreover, Plaintiff misstates the law. Qualified immunity does not turn upon whether Deputy Chief Hartwig arrested Plaintiff due to retaliatory animus. Per *Ashcroft v. al-Kidd*, — U.S. —, 131 S. Ct. 2074, 2080 (2011), the question for qualified immunity is: even if Plaintiff was arrested due to retaliatory animus, was the right clearly established? In other words, would every reasonable officer have known that Hartwig's conduct constituted animus towards Plaintiff's speech? As previously detailed, they would not have known. (*Defs.' Moving Papers*, 19:17-20:2). The Ninth Circuit cases make clear that some affirmative act demonstrating ill-intent is required. (*Id.*, 18:4-19:16). No such facts existed here. (*Id*, 19:17-20:2). Plaintiff's failure to address the issue concedes the point.

In support their second qualified immunity argument, Defendants discussed *Reichle v. Howards*, 132 S. Ct. 2088 (2012) -- where the U.S. Supreme Court stated it has never recognized a retaliatory arrest claim even where probable cause exists. (*Id*, at 20:18-21:4). Defendants also referenced the Ninth Circuit's adoption of *Reichle* and that the Circuit's earlier, contrary opinion (*Skoog*) is no longer applicable. (*Id*, 21:5-22:2). In response, Plaintiff does not address *Reichle* or the Circuit's adoption of it. (*Pl.'s Opp'n*, 29:1-6). He simply references *Skoog*. He fails to explain it is no longer good law. He also fails to explain how an inferior court can make a right clearly established, when the Supreme Court has explicitly ruled otherwise.

-9-
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

W:\Dale's Files\1752\SF0232\MSJ\Reply\Reply-MPA.docx　　　　　　　　　　　　　　　　　Case No: C12-5289 JSC (DMR)

Plaintiff also argues that, per *Skoog*, the lack of uniform treatment of journalists precludes qualified immunity. (*Pl.'s Opp'n*, 29:7-13). *Skoog* makes no such holding. Page 1235 of the opinion (to which Plaintiff cites) says nothing about defeating qualified immunity due to the failure to treat journalists equally. Nor would such a holding make sense. Qualified immunity turns upon whether a particular right was clearly established. Deputy Chief is entitled to summary adjudication of Plaintiff's third cause of action.

### B. Federal Unlawful Arrest Claim Fails Due to Probable Cause and Qualified Immunity.

Defendants moved to dismiss Plaintiff's second cause of action (unlawful arrest under the First Amendment) on two grounds: (1) probable cause to arrest; and (2) qualified immunity.

#### 1. Probable Cause to Arrest

Plaintiff does not dispute that the probable cause standard deals with probabilities, depends on the totality of the circumstances, and constitutes a reasonable ground for belief of guilt, particularized to the person to be searched or seized. (*Pl.'s Opp'n*, 23:1-26:18). Defendants argued probable cause because Deputy Chief Hartwig observed Plaintiff violate Penal Code 369i (specifically impeding a transit-line or transit-related facility). Plaintiff does not dispute that Section 369i bars such impediment, or that the impediment can take various forms (e.g. interference, interruption, hindrance). (*Pl.'s Opp'n*, 23:1-10). He contends BART consented to his presence and that he did not block the fare gates.

Plaintiff's first contention is irrelevant. While Section 369i does allow for arrest due to trespass, Defendants never made this argument. They only argued impediment of the transit line and facility. (*Defs. Moving Papers*, 22:20-24:21). Plaintiff contests a point that was never made.

Plaintiff's second contention is that a genuine issue of material fact exists as to whether Plaintiff blocked the fare gates. (*Pl.'s Opp'n*, 24:25-25:11). To wit: Hartwig's probable cause on blocking the fare gates stems from Plaintiff's failure to disperse; the evidence is conflicted as to whether any dispersal orders were given. (*Id*) Plaintiff is mistaken.

Deputy Chief Hartwig's probable cause for Section 369i did not stem from Plaintiff's failure to disperse. It originated from Plaintiff walking with the crowd in the protest and blocking the fare gates, blocking patrons. (*Defs. Moving Papers*, 23:20-26). This was observed by Hartwig and corroborated by

-10-

Plaintiff. (*Id*) Plaintiff admitted that, if patrons had attempted to reach the fare gates while the crowd was passing-by (of which he was a part) the patrons would have had to walk around the crowd. (*Id*) Plaintiff's conduct did occur after police had warned everyone to not block the fare gates, but it occurred after the <u>first</u> warning (the one given before the protest began). (*Id*) This is the warning everyone agrees upon, including Plaintiff. (*Id.*, at 11:27-12:4; 15-19).

Plaintiff argument takes issue with whether dispersal orders were issued <u>later</u>. This fact is irrelevant. Defendants never based their probable cause argument on later-issued dispersal orders. Plaintiff cannot artificially create an issue of material fact by claiming Defendants argued something when they did not. Any dispute about later orders is immaterial to the probable cause determination. The Deputy Chief is entitled summary adjudication of Plaintiff's second cause of action.

### 2. **Deputy Chief Hartwig Entitled to Qualified Immunity**

Hartwig is also entitled to qualified immunity against the unlawful arrest claim. Plaintiff concedes officers are entitled to such immunity where a constitutional right is not clearly established. (*Pl.'s Opp'n*, 22-25). He further concedes his burden to establish the right was clearly established. (*Id.*) He does not dispute the right here is arrest under Penal Code § 369i. (*Id.*, at 25:13-26:18).

Defendants cited the dearth of case authority on Section 369i. They discussed *Bryan v. MacPherson* 630 F.3d 805, 833 (9th Cir. 2010) (en banc) and how the Ninth Circuit grants qualified immunity in "dearth of authority" situations. They also referenced how a local prosecutor's office could not provide authority defining 369i an interruption in a rail facility's operation. In response, Plaintiff did not address any of these arguments. He simply reiterated his argument that a disputed fact existed as to the dispersal orders. This argument fails (as it did above) because the probable cause determination did <u>not</u> turn upon Plaintiff's alleged failure to comply with later dispersal orders.

Plaintiff also contended that, under Section 369i, the law was clearly established the arrest required intentional interference. This contention is incorrect as a matter of law. The text makes plain the statute is not a specific intent crime. All that is required is a person "whose entry, presence, or conduct upon the property interferes with, interrupts, or hinders the safe and efficient operation of the railline or rail-related facility." Tellingly, Plaintiff provided no legal basis for his contention. He did not cite any case authority or legal treatise. While he references Lt. Coontz's testimony, this is immaterial.

-11-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

W:\Dale's Files\1752\SF0232\MSJ\Reply\Reply-MPA.docx     Case No: C12-5289 JSC (DMR)

Whether or not a right is clearly established turns upon case law, not officers' personal opinions.

Deputy Chief Hartwig is entitled to qualified immunity, and summary adjudication of Plaintiff's second cause of action.

### C. State-law False Arrest Fails Due to State-law Immunity

The first cause of action (state-law false arrest/imprisonment) should be dismissed due to the existence of probable cause. As explained above in Section III(B)(1), no issue of material fact exists.

### D. No Punitive Damages

Plaintiff does not dispute that punitive damages claim must be supported by evidence of: (1) evil motive or intent, or reckless/callous disregard for rights (federal claims); and (2) clear and convincing evidence of malice, oppressions, or fraud (state-law claims). (*Pl's Opp'n*, 29:22-30:2). Nor does he dispute that punitive damages are disfavored in California and be viewed with the greatest caution. (*Id.*)

Plaintiff did not submit any evidence showing the above conduct. Rather, he noted that he has alleged a conspiracy to surveill and target him, and that "such allegations, if proven true, would justify the imposition of punitive damages." While allegations are sufficient at the motion to dismiss stage, there are not at summary judgment. Plaintiff must bring forth evidence to support his claims. If he cannot create a genuine issue of material fact, his claims are dismissed. Because Plaintiff offers no evidence that Deputy Chief Hartwig acted with evil motive/intent, callous disregard for civil rights, or malice, oppression, or fraud, both his federal and state punitive damages claims should be dismissed.

## IV. RESPONSE TO PLAINTIFF'S EVIDENTIARY OBJECTIONS

Plaintiff's objection to Chief Rainey's declaration (¶¶ 3 and 4) should be denied. Rule 26(a)(1)(A)(ii) requires that parties must initially disclose a copy of all documents in party's possession, custody or control that it may use to support its claims or defenses. Per Rule 26(e), the initial disclosure must be supplemented "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Defendants learned of (and decided to use) Chief Rainey's inquiry to the Contra Costa District Attorney's Office while preparing the instant Motion for Summary Judgment/Adjudication. The signed declaration is dated December 16, 2013. Defendants filed the Motion on December 23, 2013. Under

-12-

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

W:\Dale's Files\1752\SF0232\MSJ\Reply\Reply-MPA.docx   Case No: C12-5289 JSC (DMR)

Rule 26, Defendants' obligation to disclose the Rainey declaration (and its attached memorandum) arose around this time. In enclosing the signed declaration with the instant Motion, Defendants fulfilled the spirit of the Rule (if not the letter). Defendants acknowledge they did not file a formal Rule 26 Supplemental Disclosure. Defendants could not have disclosed the signed declaration any sooner than December 16th: it did not exist before then. It was created during the preparation of this Motion.

Plaintiff has suffered no prejudice. The declaration only goes to Defendants' qualified immunity defense. It speaks to whether the law on Penal Code ¶ 369i was clearly established at the time of the incident. This is entirely a question of law, one for the Court to decide. No factual discovery is needed.

Per Rule 37(c)(1), there is no evidentiary sanction for failure to timely disclose if the failure was substantially justified or harmless. Based upon the above, the exception applies. Defendants respectfully respect use and consideration of the declaration (and attached memo) for this Motion.

## V. EVIDENTIARY OBJECTIONS

Pursuant to Local Rule 7-3(c), "[a]ny evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum." Defendants submit the following evidentiary objections to the evidence submitted in support of Plaintiff's Opposition.

| Plaintiff's Evidence | Defendants' Objection |
| --- | --- |
| Declaration of David Morse, ¶ 7 | Irrelevant (FRE 402); Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701) |
| Declaration of David Morse, ¶ 8 | Irrelevant (FRE 402) |
| Declaration of David Morse, ¶ 9 | Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701) |
| Declaration of David Morse, ¶ 10 | Irrelevant (FRE 402); Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701) |
| Declaration of David Morse, ¶ 11 | Irrelevant (FRE 402) |
| Declaration of David Morse, ¶ 12 | Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701) |
| Declaration of David Morse, ¶ 13 | Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701) |
| Declaration of David Morse, ¶ 14 | Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701) |
| Declaration of David Morse, ¶ 15 | Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701) |
| Declaration of David Morse, ¶ 16 | Irrelevant (FRE 402); Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701) |

| | |
|---|---|
| *Declaration of David Morse*, ¶ 17 | Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701) |
| *Declaration of David Morse*, ¶ 20 | Irrelevant (FRE 402); Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701); as matter of law, the shooting of Mr. Hill has been found lawful (see *Hill v. Bay Area Rapid Transit Dist.*, C-12-00372 DMR, 2013 WL 5272957 (N.D. Cal. Sept. 18, 2013) |
| *Declaration of David Morse*, ¶ 22 | Irrelevant (FRE 402); Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701); as matter of law, the shooting of Mr. Hill has been found lawful (see *Hill v. Bay Area Rapid Transit Dist.*, C-12-00372 DMR, 2013 WL 5272957 (N.D. Cal. Sept. 18, 2013) |
| *Declaration of David Morse*, ¶ 25 | Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701) |
| *Declaration of David Morse*, ¶ 35 | "Sham Affidavit" Rule, *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("[t]he general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.") <br><br> The Paragraph is contradicted by Plaintiff's deposition testimony, when he stated that anyone blocking the fare gates would be arrested (*Morse Dep.*, Ex. B to Allen, 77:19-78:8). The Paragraph omits the reference to being arrested. |
| *Declaration of David Morse*, ¶ 39 | Speculation (FRE 602) (as to "minimally disruptive") |
| *Declaration of David Morse*, ¶ 44 and 63 | "Sham Affidavit" Rule. Denial of obstructing BART facilities and blocking the fare gates is contradicted by Plaintiff's deposition testimony that he walked in the protestors in the circle; the circle passed in front of the fare gates; and any patrons attempting to enter the fare gates would have had to walk around the protestors. (*Morse Dep.*, Ex. B to Allen, 71:10-16; 72:5-7; 73:1-74:12; 76:3-77:24). <br><br> Plaintiff's personal belief that he did not obstruct BART facilities or block the fare gates is irrelevant (FRE 402). Probable cause is an objective reasonableness test. Also, Penal Code 369i is not a specific-intent statute. No intent to violate is required. |
| *Declaration of David Morse*, ¶¶ 46 and 49 | Speculation (FRE 602) |
| *Declaration of David Morse*, ¶ 52 | Irrelevant (FRE 402); Speculation (FRE 602); "Sham Affidavit" Rule. Plaintiff was questioned |

-14-
DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

W:\Dale's Files\1752\SF0232\MSJ\Reply\Reply-MPA.docx  Case No: C12-5289 JSC (DMR)

| | during deposition about Officer Coduti: he said Coduti turned him over to Officer Knudtson and left. (*Morse Dep.*, Ex. B to Allen, 101-102). |
|---|---|
| *Declaration of David Morse*, ¶¶ 57-58 | Irrelevant (FRE 402) |
| *Declaration of David Morse*, ¶ 61 | Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701) |
| Ex. "A"-"I" to the Declaration of David Morse, stamped Morse 691-693 (Ex. "A"); 833-845 (Ex. "B"); 943-945 (Ex. "C"); 1103-1110 (Ex. "D"); 1316-1320 (Ex. "E"); 1739-1760 (Ex. "F"); 1879-1882 (Ex. "G"); 1959-1961 (Ex. H"); 1974-1976 (Ex. "I"). | Hearsay (FRE 801) |
| Ex. "O"; "P"; and "Q" to the Declaration of Michael Siegel | Rule of Completeness (FRE 106). Plaintiff asserts that three separate videos from BART closed-circuit television depict his role in the protest. He only provides excerpts from these videos: 2 minutes (Ex. "O"); 56 seconds (Ex. "P"); and 1 minute, 14 seconds (Ex. "Q"). All the excerpts cover a particular time-frame: 5:13 pm until 5:22 pm. By Plaintiff's own admission, the protest lasted approximately 30 minutes (5:00 p.m.-5:30 p.m.) *David Morse Declaration*, ¶ 31). Defendants object to the admission of video excerpts. Either the entirety of the CCTV footage showing the protest is admitted into evidence, or none at all. |

## VI. CONCLUSION

For these reasons, Defendants respectfully request the Court grant their Motion for Summary Judgment/Summary Adjudication.

Dated: January 15, 2014

ALLEN, GLAESSNER & WERTH

By  /s/  Kevin P. Allen
DALE L. ALLEN, JR.
KEVIN P. ALLEN
Attorneys for Defendants
SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT AND BART DEPUTY POLICE CHIEF DAN HARTWIG