DAN SIEGEL, SBN 56400
MICHAEL SIEGEL, SBN 269439
SIEGEL & YEE
499 14th Street, Suite 300
Oakland, CA 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
dansiegel@siegelyee.com
michael@siegelyee.com

Attorneys for Plaintiff
DAVID MORSE

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID MORSE,<br><br>Plaintiff,<br><br>vs.<br><br>SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT (BART); and BART Deputy Police Chief DAN HARTWIG, sued in his official and individual capacities,<br><br>Defendants. | Case No. C12-5289 JSC (DMR)<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' EVIDENTIARY OBJECTIONS RE: MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing: February 6, 2014<br>Time: 9:00 a.m.<br>Court: F, 15th Floor<br>Judge: Hon. Jacqueline Scott Corley<br><br>Case Filed: October 12, 2012<br>Trial Date: March 31, 2014 |

Plaintiff David Morse hereby responds to the evidentiary objections filed by defendants San Francisco Bay Area Rapid Transit District and BART Deputy Police Chief Dan Hartwig (collectively, "BART"), included in Dkt. 67 at pages 16-18.

**Responses to Defendants' Evidentiary Objections**

| **Evidence** | **Objection** | **Plaintiff's Response** |
|---|---|---|
| Morse Dec. ¶ 7. | Relevance (FRE 402); Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701). Dkt. 67 at 16:17-18. | David Morse has established his direct knowledge of the facts in question, through his tireless journalistic coverage of the Oscar Grant killing and related events. The events are relevant background concerning the reason for ongoing anti-BART protests, and also the motive for BART PD to silence such protest. |
| Morse Dec. ¶ 8. | Relevance (FRE 402). *Id.* at 16:18-19. | Morse's efforts to document the protests against BART PD are directly relevant to the events in question. In particular, Morse's coverage establishes BART's motive to subject him to false arrest: namely, the desire to "chill" critical commentary. |
| Morse Dec. ¶ 9. | Speculation (FRE 602); | Morse has direct knowledge of the facts in question. He wrote the article attached as |

| | | |
|---|---|---|
| | Impermissible Lay Opinion Testimony (FRE 701). *Id*. at 16:19-20. | Exhibit A to the Morse declaration. The fact that Morse published the attached article is relevant to show that Morse published information that was critical of BART PD, thus supplying a motive for Defendants' later acts of retaliation. |
| Morse Dec. ¶ 10. | Relevance (FRE 402); Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701). *Id*. at 16:21. | Morse has direct knowledge of the facts in question. He wrote the article attached as Exhibit B to the Morse declaration. The fact that Morse published the article is relevant to show that Morse published information that was critical of BART PD, thus supplying a motive for Defendants' later acts of retaliation. |
| Morse Dec. ¶ 11. | Relevance (FRE 402). *Id*. at 16:22. | The fact that Morse disseminated legal documents concerning the prosecution of Johannes Mehserle for the unlawful killing of Oscar Grant is relevant to show that Morse published information that was critical of BART PD, thus supplying a motive for Defendants' later acts of |

| | | |
|---|---|---|
| | | retaliation. |
| Morse Dec. ¶ 12. | Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701). *Id*. at 16:23. | Morse has direct knowledge of his conduct to publicize information concerning the Mehserle murder trial. Morse has direct knowledge of the universe of information concerning the Mehserle trial that was available in the public sphere. |
| Morse Dec. ¶ 13. | Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701). *Id*. at 16:24. | Morse has direct knowledge of the facts in question. He published Exhibit C, which calls the BART police "a racist, murdering gang," and which calls the BART General Manager "just as culpable" for the misconduct of BART police. |
| Morse Dec. ¶ 14. | Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701). *Id*. at 16:25. | Morse has direct knowledge of the facts in question. He published Exhibit C. The document—which is obviously critical of BART PD—speaks for itself. The document is relevant to show defendants' retaliatory motive. |
| | | |

| | | |
|---|---|---|
| Morse Dec. ¶ 15. | Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701). *Id*. at 16: 26-27. | Morse has direct knowledge of the facts in question. He published Exhibit D, which claims that, as of October 27, 2009, "not a single person at BART has been held accountable" for the killing of Oscar Grant. Morse's conclusion was based upon his attendance and reporting at numerous proceedings, including hearings of the California Assembly. |
| Morse Dec. ¶ 16. | Relevance (FRE 402); Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701). *Id*. at 16:28. | Morse has direct knowledge of the facts in question. He published Exhibit E, which criticized BART for "smearing" the friends of Oscar Grant through public statements. The document is relevant to show defendants' retaliatory motive. |
| Morse Dec. ¶ 17. | Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE | Morse has direct knowledge of the facts in question. He published Exhibit E. The document speaks for itself. The fact that Morse published this article helps to establish defendants' retaliatory motive. |

| | | |
|---|---|---|
| | 701). *Id*. at 17:1. | |
| Morse Dec. ¶ 20. | Relevance (FRE 402); Speculation (FRE 602); Impermissible Lay Opinion Testimony. Also: "the shooting of Mr. Hill has been found lawful." *Id*. at 17:2-5. | Morse has direct knowledge of the facts in question, through his tireless journalistic efforts to report on BART police misconduct. Morse has direct knowledge of BART's efforts to advance various justifications for the killing of Charles Hill. Defendants' request for judicial notice of the adjudication of Mr. Hill's civil case is inapposite. BART may be properly subject to criticism and scrutiny even if it prevailed in subsequent litigation. BART's conduct to kill Charles Hill is relevant to show a history of unsavory and highly criticized conduct of BART PD, and to establish a motive for defendants' retaliatory conduct. |
| Morse Dec. ¶ 22. | Relevance (FRE 402); Speculation (FRE 602); Impermissible Lay | Morse has direct knowledge of the facts in question. He wrote multiple articles that criticized BART for the killing of Charles Hill. He published numerous photographs |

| | | |
|---|---|---|
| | Opinion Testimony (FRE 701). Also: "the shooting of Mr. Hill has been found lawful." *Id.* at 17:5-8. | of public demonstrations in response to the Charles Hill killing. Morse's publication of this information, which includes critical and embarrassing information concerning BART PD, is relevant to show defendants' retaliatory motive. |
| Morse Dec. ¶ 25. | Speculation (FRE 602); Impermissible Lay Opinion Testimony (FRE 701). *Id.* at 17:9. | Morse has direct knowledge of the facts in question. He published Exhibit G, which contains highly critical commentary concerning BART's decision to shut down cell phone service during commute hours. |
| Morse Dec. ¶ 35. | "Sham Affidavit" Rule. *Id.* at 17:10-16. | The Sham Affidavit rule does not apply. The rule only applies to "sham" testimony that "flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment." *See Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 267. The trial court must undertake an inquiry to determine whether a contradiction is |

| | | |
|---|---|---|
| | | actually a "sham." *Id*. Here, Morse's declaration clearly falls within a safe harbor discussed by the 9th Circuit in *Kennedy*, in which an affiant may clarify previous, vague testimony, after having the opportunity to review material facts. *Id*. at 266. In his declaration, Morse describes reviewing the time stamps of his photographs as well as other discovery. (*See* Morse Dec. ¶¶ 31-32.) BART has produced documents as well as audio and video files that directly document the announcements made by Lt. Coontz during the protest in question, which provide further basis for Morse to clarify his testimony. Finally, Morse's statement does not directly contradict his deposition testimony. During his deposition, Morse noted that he did not remember "verbatim" what the officers announced. (Allen Dec., Ex. B, at 77-78.) Thus, the rule does not apply. |
| | | |

| | | |
|---|---|---|
| Morse Dec. ¶¶ 44 and 63. | "Sham Affidavit" Rule. *Id*. at 17:17-26; Relevance (FRE 402). *Id*. at 17:17-26. | The Sham Affidavit rule does not apply. The rule only applies to "sham" testimony that "flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment." *See Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 267. The trial court must undertake an inquiry to determine whether a contradiction is actually a "sham." *Id*.<br>Here, Morse's declaration clearly falls within a safe harbor discussed by the 9th Circuit in *Kennedy*, in which an affiant may clarify previous, vague testimony, after having the opportunity to review material facts. *Id*. at 266.<br>Furthermore, Morse's testimony is not contradictory. The cited sections of Morse's deposition fail to establish contradictory testimony. Morse never admitted to chanting, or marching, or walking in formation with protestors. He never admitted to obstruction of facilities. Thus, the sham affidavit rule does not |

| | | |
|---|---|---|
| | | apply. |
| Morse Dec. ¶¶ 46 and 49. | Speculation (FRE 602). *Id*. at 17:27. | Morse has direct knowledge of the facts in question. He has established the reliability of the time-stamping mechanism of his photography equipment. (Morse Dec. ¶¶ 31-32.) The metadata from his camera, in conjunction with the photographs he took, establishes the timing in question. Morse directly witnessed Hartwig's action to order his arrest. |
| Morse Dec. ¶ 52. | Relevance (FRE 402); Speculation (FRE 602); "sham affidavit" rule. *Id*. at 17:27-18:2. | Morse has direct knowledge of what Officer Coduti said to him. He reasonably inferred that, because Coduti called him "Dave Id," his nom de plume from his writing at Indybay, that Coduti knew he was a journalist.<br>The Sham Affidavit rule does not apply. The rule only applies to "sham" testimony that "flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment." *See Kennedy v.* |

| | | |
|---|---|---|
| | | *Allied Mutual Ins. Co.*, 952 F.2d 262, 267. The trial court must undertake an inquiry to determine whether a contradiction is actually a "sham." *Id*. Here, Morse was not asked by Dale Allen, the lawyer taking the deposition, what Officer Coduti stated to Morse while he was in custody. Morse has consistently maintained his allegation concerning Coduti's comments. (*See* Dkt. 1 (Verified Complaint) ¶ 30 (same language)). There is no contradictory testimony. The sham affidavit rule does not apply. |
| Morse Dec. ¶ 57-58. | Relevance (FRE 402). | Morse's testimony concerning his harassment by Officer Knudtson is relevant to the issue of damages – i.e., the pain and suffering suffered by Morse. Additionally, the inordinate focus by BART officers on a single detained journalist is relevant to show defendants' retaliatory animus. |
| | | |

| | | |
|---|---|---|
| Morse Exhibits A-I. | Hearsay (FRE 801). | The exhibits in question—articles published by Morse—are not offered for the truth asserted therein. Rather, the articles are presented to show the types of articles that BART officers reviewed prior to taking retaliatory action against David Morse. As discussed in plaintiff's opposition, numerous BART officers and even commanders admitted to regularly reviewing the articles published by Morse. Thus, the exhibits are offered to show notice, the state of mind of BART officers prior to taking retaliatory action, knowledge, intent, and motive. |
| Siegel Exhibits O, P, and Q. | Rule of Completeness (FRE 106). | The documents in question were produced by defendants. To the extent that defendants can point to any relevant footage from the omitted video portions, they have the ability to produce such portions. In an abundance of caution, however, Morse will file the full video footage in question. *See* Supplemental |

| | | Declaration of Michael Siegel, Ex. A. |
|---|---|---|

Dated: February 3, 2014

SIEGEL & YEE

By: /s/ Michael Siegel_________
Michael Siegel

Attorneys for Plaintiff
DAVID MORSE