DAN SIEGEL, SBN 56400
MICHAEL SIEGEL, SBN 269439
SIEGEL & YEE
499 14th Street, Suite 300
Oakland, CA  94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
dansiegel@siegelyee.com
michael@siegelyee.com

Attorneys for Plaintiff
DAVID MORSE

# UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MORSE,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT ("BART") Deputy Police Chief DAN HARTWIG, sued in his official and individual capacities,<br><br>　　　　Defendants. | Case No. C12-5289 JSC<br><br>**PLAINTIFF'S TRIAL BRIEF**<br><br>Pretrial Conference: September 4, 2014<br>Time: 2:00 p.m.<br>Court: F, 15th Floor<br>Judge: Hon. Jacqueline Scott Corley<br><br>Case Filed: October 12, 2012<br>Trial Date: September 22, 2014 |

### I.    INTRODUCTION

Plaintiff David Morse sues BART Deputy Police Chief Dan Hartwig for retaliatory arrest motivated by Morse's protected First Amendment conduct. Morse, a journalist for the San Francisco Independent Media Center ("Indybay"), was arrested by BART police under Hartwig's command on September 8, 2011, while covering a political protest. The arrest followed a multi-year period during which Morse published hundreds of photographs and articles that were, in general, highly critical of BART police conduct.

---

*Morse v. BART, et al.,* Case No. C12-5289 JSC
Plaintiff's Trial Brief                                                                                                          1

BART commanders who were the subjects of Morse's critical commentary—and who admit to reading Morse's work—took steps to target Morse for police action. On September 8, 2011, BART police tracked Morse's movements and ultimately ordered his arrest, despite the fact that he was present at the protest in a journalistic capacity. After arresting Morse, Deputy Chief Hartwig made the decision to release numerous other similarly situated journalists. Harwtig and Fairow then made a public argument that Morse was not a "legitimate" journalist. Through these facts, Morse can show that Fairow, Hartwig, and other BART police officers collaborated to retaliate against Morse, and that they were substantially motivated by his critical journalistic commentary.

## II.   STATEMENT OF FACTS

The evidence to be presented at trial will demonstrate:

### A. David Morse Has Been a Tireless Investigator of BART Police Misconduct Since the January 1, 2009, Killing of Oscar Grant

David Morse is a veteran journalist, with a particular focus on photojournalism. In January 2009, Morse became intensely involved in documenting the public response to the police shooting of Oscar Grant at the Fruitvale BART Station in Oakland. Morse published numerous articles about public demonstrations, court dates, and local and state legislative hearings. His work was often critical of the BART police force, and he criticized high-ranking BART officials by name. Morse's point of view did not diminish his reach, however, and his documentation of the Oscar Grant movement was licensed to numerous local and national media agencies.

### B. In July 2011, BART Police Faced Renewed Scrutiny Following the Shooting Death of Charles Hill and a Subsequent Decision to Block Cell Phone Service in BART Stations

On July 3, 2011, a BART police officer shot and killed Charles Hill. In response to the shooting, BART facilities were hit by a new round of protests by various community groups, including "No Justice No BART." Morse published regarding the protests and the BART response. He publicized facts and critical commentary about Hill's death.

At an August 2011 protest, BART police decided to turn off cell phone service within BART facilities, leading to widespread criticism. The online activist group "Anonymous" became involved to protest the cell phone shutdown, and the anti-BART police protests gathered further steam. Morse covered this issue as well.

### C. Morse Continued to Criticize BART Police Officials Including Deputy Chief Benson Fairow, Who Responded by Targeting Morse for Arrest

Throughout the protests in the summer of 2011, Morse continued to publish several times a week on average. Various BART police officers read Morse's work, including Chief Kenton Rainey, Deputy Chief Benson Fairow, Deputy Chief Hartwig, and other commanders and officers. The commanders discussed these articles together. Hartwig set up a "Google Alert" that sent him articles that Morse had written.

Prior to September 8, 2011, Deputy Chief Fairow took the extraordinary step of asking an intelligence officer to prepare an informational flyer that identified Morse by picture and the words "unknown true name." No such flyer depicting a known journalist was issued before, and none has been issued since. Dam sent the informational flyer to BART command staff and sergeants who would be working the protest.

At a briefing on September 8, 2011, for BART commanders and officers who would be policing the protest, the commanders identified Morse as a "subject" and specifically discussed how he might be subject to arrest.

BART utilized undercover police officers to monitor David Morse during the September 8, 2011, protest. During the protest, Officer Dam sent out multiple "Intel Updates" that described the location and conduct of Morse.

### D. Deputy Chief Dan Hartwig, On-Site Commander for BART Police on September 8, 2011, Knew that Morse Was a Regular Journalist But Did Not Stop the Plan to Arrest Him

On September 8, 2011, BART police permitted the protest to continue for approximately fifteen minutes. Then, at defendant Hartwig's direction, a line of police encircled the main group of protestors, thus detaining several dozen individuals.

At the time of his arrest, Morse was holding two cameras and was displaying a press pass. At Hartwig's direction, BART Officer Shane Coduti roughly pulled Morse from the crowd and placed handcuffs tightly around Morse's wrists. Coduti took Morse to a small office within a BART police substation at the Powell Street station.

Morse was forced to spend several hours in custody, contrary to BART police policy which requires cite-and-release for criminal infractions. BART police transported him from the Powell Street substation to San Francisco County Jail. There, Morse was eventually cited and released.

### E. Hartwig Personally Released Every Other Journalist

Other than Morse, BART did not arrest any other journalist on September 8, 2011. Numerous media were within the protest group, and had acted in an identical fashion to Morse. Hartwig personally released the other journalists.

### F. Hartwig and Fairow Publicly Justified Morse's Arrest By Stating that He Was Not a "Legitimate" Journalist

Following the protest, Hartwig publicly stated that "legitimate members of the media were identified and released." His statement regarding "legitimate" media was echoed by Fairow, who argued that Morse was not a "bona fide" journalist.

### G. The Charges Against Morse Were Dismissed

Months later, the Superior Court dismissed all charges against Morse.

### III. STATEMENT OF LAW

To prevail on his claim for retaliation motivated by protected First Amendment conduct under 42 U.S.C. § 1983, Morse must demonstrate: (1) defendant BART Deputy Police Chief Dan Hartwig acted under color of law; (2) the acts of Hartwig's subordinates, including Officer Coduti and others, deprived plaintiff Morse of his particular rights under the United States Constitution; and (3) (a) Hartwig knew, or reasonably should have known, that his subordinates were engaging in these acts and that their conduct would deprive Morse of these rights, and (b) Hartwig failed to prevent his subordinates from engaging in such conduct. Model Ninth Circuit Jury Instructions (Civil) No. 9.3.

Morse must further prove that he was engaged in First Amendment protected conduct during the protest in question, that Hartwig is responsible for his arrest, and that Hartwig was substantially motivated by Morse's protected conduct when he ordered the arrest. Model Ninth Circuit Jury Instructions (Civil) No. 9.10.

Supervisory liability under 42 U.S.C. § 1983 can be imposed if (1) the supervisor was personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Doe v. City of San Diego*, ___ F.Supp.2d ___, 2014 WL 3893045 at *6-7 (S.D. Cal. Mar. 27, 2014).

"The requisite causal connection can be established . . . by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011); *Doe, supra*, at *6. "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr, supra*, 652 at 1207-08 (9th Cir. 2011); *Doe, supra*, at *6.

Here, Deputy Chief Hartwig should be held liable as a supervisor who failed to prevent the discriminatory course of conduct initiated by others, and who directed or permitted subordinates to continue that course of conduct, resulting in Morse's unlawful arrest. There is evidence that Hartwig "knowingly refused to terminate" the plan of action set in motion by Deputy Chief Fairow, by which BART police issued an unusual informational flyer that focused all BART police covering the protest on David Morse, a known journalist. At the police officer meeting on the day of the protest, which Hartwig attended, the arrest of Morse was openly discussed. When Hartwig ended the protest later that day, he selected Morse for arrest first, and ordered Officer Coduti to carry out the arrest. Hartwig and Fairow collaborated to justify the arrest after the fact, citing Morse's lack of "legitimate" journalistic status.

Based on these facts, and as will be shown further at trial, Hartwig can be held liable because he acted in concert with Fairow and various subordinates to target and arrest Morse, and because Hartwig, Fairow, and others were motivated to target Morse for police action because of his media work highlighting BART police misconduct.

### IV. DAMAGES

Morse seeks compensatory and punitive damages, as well as attorneys' fees and costs of suit. *See* 42 U.S.C. § 1988. Morse claims compensatory damages for deprivation of liberty, emotional distress, humiliation, embarrassment, and injury to reputation. Morse also claims punitive damages for wanton, willful, malicious conduct.

To prevail on his claim for punitive damages, Morse must demonstrate by a preponderance of the evidence that Hartwig acted willfully and maliciously in arresting Morse in retaliation for his journalistic activities. *See In re Exxon Valdez*, 270 F.3d 1215 (9th Cir. 2001) (absent an explicit exception, the "standard of proof generally applied in federal civil cases is preponderance of evidence").

Here, Morse will show that Hartwig was, at the minimum, deliberately indifferent to Deputy Chief Fairow's plan to target Morse for police action. Furthermore, Hartwig knowingly permitted the retaliatory course of conduct to continue when he ordered Officer Coduti to subject Morse to custodial arrest. Finally, Hartwig showed malice when he told media that Morse was not a "legitimate" journalist and could thus be treated more harshly than the rest.

Dated: August 28, 2014            SIEGEL & YEE

                                  By: /s/ Michael Siegel
                                       Michael Siegel

                                  Attorneys for Plaintiff
                                  DAVID MORSE