DALE L. ALLEN, JR., State Bar No. 145279
dallen@aghwlaw.com
KEVIN P. ALLEN, State Bar No. 252290
kallen@aghwlaw.com
ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone:    (415) 697-2000
Facsimile:    (415) 813-2045

Attorneys for Defendants
BART DEPUTY POLICE CHIEF DAN HARTWIG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MORSE,<br><br>    Plaintiff,<br><br>    v.<br><br>SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT (BART); and BART Deputy Police Chief DAN HARTWIG, sued in his official and individual capacities,<br><br>    Defendants. | Case No.: C12-5289 JSC (DMR)<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COURT'S TENTATIVE RULING ALLOWING PLAINTIFF'S EX. 100 AS A DEMONSTRATIVE**<br><br>Hon. Jacqueline Scott Corley<br><br>Date:    September 4, 2014<br>Time:    2:00 p.m.<br>Ctrm:    F, 15th Floor<br>Trial:    September 22, 2014 |

Pursuant to the Court's tentative ruling denying the admissibility of Plaintiff's Exhibit 100 (a video "compilation") and granting use of Exhibit 100 as a demonstrative, Defendant hereby files his opposition to the use of the video "compilation" as a demonstrative on the grounds that it lacks authentication and is far more prejudicial than probative under FRE 403.

**I.    INTRODUCTION**

On August 27th Plaintiff disclosed that he intended to introduce a video "compilation" into evidence to support his argument that Defendant targeted him for arrest. The "compilation" shows no direct or indirect evidence that Defendant did anything to explicitly target Plaintiff for arrest. Plaintiff has already conceded that the "compilation" is outside the bounds of appropriate evidence by withdrawing Exhibit 100. Docket No. 102.

1  However, the "compilation" must still be excluded even as demonstrative evidence
2  because video synchronization is a complex technical task requiring authentication by an expert.
3  In addition, the "compilation" is not an accurate depiction of the events as seen by the Defendant
4  and thus must also be excluded under FRE 403 as highly prejudicial to Defendant with a high
5  potential of misleading the jury.

**II.    FACTS**

Defendant first learned of Plaintiff's intention to introduce such a "compilation" at the parties meet and confer regarding pre-trial issues, including the exhibit list, on August 27th. (Declaration of Kevin P. Allen ("Allen Decl."), ¶2). The compilation was listed as Exhibit 100 on Plaintiff's exhibit list. Defendant objected to Exhibit 100. The Court heard argument at the pre-trial conference on September 4th on whether Exhibit 100 would be admitted into evidence and tentatively ruled denying the admissibility of Plaintiff's Exhibit 100 and granting use of Exhibit 100 as a demonstrative. Docket No. 101. Plaintiff then withdrew Exhibit 100, but still intends to use the exhibit as a demonstrative. Docket No. 102.

As far as Defendant can ascertain, "the compilation" starts with what appears to be a BART surveillance video ("BART video") of Powell BART station at 17:12:51, based on the timestamp emblazoned across the bottom of the video, which has no sound and appears on the left side of the screen. (Allen Decl., ¶3, Ex. A, Plaintiff's Exhibit 100.) At 17:13:07 another video begins playing which does not have a timestamp and does have sound and plays on the right side of the screen. (Allen Decl., ¶3, Ex. A, Plaintiff's Exhibit 100.) Both videos play continuously until both videos ends at approximately 17:34:58. (Allen Decl., ¶3, Ex. A, Plaintiff's Exhibit 100.) At various times, the BART video is "zoomed" in. (Allen Decl., ¶3, Ex. A, Plaintiff's Exhibit 100.) Plaintiff and Christopher Kantor (the leader of the protest), as well as Defendant are visible at various times during the video, but at others none are visible in either video. (Allen Decl., ¶3, Ex. A, Plaintiff's Exhibit 100.)

In addition, at various times throughout the compilation, and with no connection to what is being depicted in the videos, still photographs are displayed below the videos. (Allen Decl., ¶3, Ex. A, Plaintiff's Exhibit 100.) The photographs lack timestamps and there is no evidence

20741.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

that Defendant saw the conduct depicted in the images. Also, the video includes select BART radio dispatches, but Plaintiff has provided no documentation that those dispatches occurred at the times played during the video. (Allen Decl., ¶3, Ex. A, Plaintiff's Exhibit 100.)

The BART video appears to have a different frame rate from the other unidentified video. Plaintiff has represented that the compilation was created by Plaintiff's friend, along with Plaintiff himself. (Allen Decl., ¶2.) Plaintiff included no other materials in the exhibit list regarding the methods or processes used to create the compilation or verify that the videos were appropriately synchronized.

## III. ARGUMENT

### A. Use of Video "Compilation" as Demonstrative Requires Authentication to Establish Foundation

Assembling a video "compilation" is not as simple as splicing together a home movie using iMovie on a personal computer. Instead, to ensure that a video compilation is accurate, the compiler must explain and carefully analyze how he or she reconciled multiple videos, recorded on various devices of differing quality from various vantage points. Each video may have utilized a different frame rate and resolution and may have been shot from different angle. As such, if Plaintiff intended to use this "compilation," then Plaintiff must explain how the video compilation was created and the method by which it was synchronized. Plaintiff failed to do so. Therefore, the Court should extend its ruling to exclude the use of the "compilation" as a demonstrative.

Plaintiff intends to show the jury a "compilation" without any guide to how it was created or any assurances that it accurately captures the scene. When demonstrative evidence, such as the "compilation," has distinctive characteristics which make it unique, readily identifiable, and relatively resistant to change, its foundation for admission may be established by testimony that the evidence is what its proponent claims it to be. Fed.R.Evid. 901. A party can authenticate evidence in any way that presents "evidence sufficient to support a finding that the matter in question is what its proponent claims." *United States v. Smith*, 591 F.3d 974, 979 (8th Cir. 2010). In addition, Rule 901(b) provides that a party may authenticate evidence through "[t]estimony [of

a witness with knowledge] that a matter is what it is claimed to be." Id. Several courts have discussed the application of the authentication requirements to videotape evidence.

In *United States v. Mills*, 194 F.3d 1108, 1111-12 (10th Cir. 1999) the court addressed under what circumstances videotapes with missing portions should be excluded due to authenticity concerns. In *Mills*, the officer responsible for creating the video testified as to the authenticity of the tape, and he confirmed at trial that, except for the deleted portion, it accurately depicted the entire episode. Id. at 1111. The video included independent date and time information. Id. at 1112. The evidence was admitted and the defendant appealed. Id. at 1111. The defendant argued on appeal that the tape should not have been admitted. Id. at 1112. On these facts, the court held that the evidence is "readily identifiable," "with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with." Id. at 1112.

In *Scott v. Harris*, 550 U.S. 372, 378 (2007) the Supreme Court noted that "there are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened."

More recently, in *Asociacion De Periodistas De Puerto Rico v. Mueller*, 680 F.3d 70, 80 (1st Cir. 2012), the court addressed under what circumstances footage from multiple angles of the same incident could be authenticated. In *Mueller* several journalists brought action against FBI agents, who they alleged used excessive force against them during the execution of a search warrant. Id. at 72. After summary judgment was granted in favor of Defendants, the journalists appealed on a number of grounds including that video footage should have not have been considered by the court below. Id. at 79. On appeal, Plaintiffs argued that the clips were "incomplete" and "extensively edited." Id. at 79. The court was unpersuaded due to the fact that plaintiffs conceded that the videos showed actual footage and the fact that the FBI submitted declarations to authenticate the videos. Id. at 80. In affirming the trial court's consideration of the videos, the court indicated that the Plaintiffs could have attacked the videos by offering "specific reasons why they are not fair depictions or argued that specific portions (or omissions) are misleading or prejudicial, they have not done so." Id. at 80.

Within this landscape, district courts, including the Northern District of California have recognized the technical nature of authenticating images depicted in video. In *US. v. Torres-Rosario*, 600 F.Supp. 2d 327, 323-33 (D.P.R. 2009) the court permitted an expert in forensic photography and video analysis to testify about his impressions after examining a video of an incident to determine the heights of the persons depicted therein.

Judge Edward Chen addressed a very similar issue to Plaintiff's proposed "compilation" in *Grant Jr., et al. v. BART* (Case Bo. C09-00901) where Plaintiffs sought to exclude Defendants from introducing expert testimony from Michael Schott, a forensic video expert, relating to synchronization of all six videos available which depicted the incident because his testimony would usurp the role of the jury as the fact-finder. Docket No. 387. In *Grant Jr*. Defendants designated Schott as an expert and he prepared a report in which he detailed how he painstakingly pieced all the available videographic information together down to the frame to ensure that the synchronization accurately portrayed events. Docket No. 417, p. 11. In creating the compilation he followed professional standards. In opposition to Plaintiffs' motions, Defendants filed a declaration from Mr. Schott, previously filed in conjunction with Defendants consolidated motions for summary judgment, which detailed the method by which he synchronized all six videos available of the incident. Case No. C09-00901, Docket No. 417, p. 10- p. 16. Within Schott's declaration he stated the following regarding how he synchronized the video, consistent with what an expert in the field does:

- Schott photographed and measured the area where the events occurred ;
- He noted the "low frame rate of the A20 platform recording" (which may be similar to the BART video here);
- He created a text overlay for each video which includes the frame number native to the source;
- He created a matrix which shows the events across video sources which took place at any given point in time; and
- He analyzes in detail the movements of Defendant Domenici on the platform.

Case No. C09-00901, Docket No. 417, p. 10- p. 12

///

///

On these facts, Judge Chen ruled:

> The process by which Mr. Schott synchronized the video as well an explanation of the various angles from which the videos were shot *is clearly outside the common knowledge of the average layperson.* Similarly, traditional forensic analyses of the resulting images – such as opinions of distance, height, angles, and the like – are similarly helpful. Finally, limited contextual analysis of the video or images (such as identifying the various individuals shown in the video, placing a given segment of the video/image into context within the larger events, or describing the relationship of the various views to each other) would likewise be helpful.

Docket No. 489, p. 49, ln. 23 – p. 50, ln. 2. (*emphasis added*).

Here, Defendant has serious doubts about the methods by which synchronized the video "compilation." The "compilation" is not similar to the video clips in *Mueller* or the missing portions of the video in *Mills*. Instead, the "compilation" does not provide a full picture of what occurred. What is at issue is whether taken together the two videos displayed, along with the audio and still photographs, correctly depict the totality of the scene which presented *Defendant*. Defendant's concerns are highlighted by Plaintiff's choice to include at least 20 still photographs which are displayed as the videos play without including the timestamps on those photographs to ensure that the photos were taken at those exact points in time. In addition, the "compilation" uses the Powell BART station surveillance camera which appears to have a slower frame rate than the unidentified camera angle displayed next to it. As Schott explained in his declaration properly synchronizing videos which have different frame rates is no simple task. Docket No. 417, p. 12, ¶¶ 5-7. Finally, Plaintiff provides no documentation to establish how the BART audio dispatches that play during the videos were properly synchronized.

Although Defendant does not dispute that the jury is fully capable of arriving at factual determinations from a video, or that each video and still photograph alone is authentic, as Judge Chen recognized in *Grant Jr.*, Plaintiff cannot use this "compilation" without assurances that the content was synchronized properly. Unless Plaintiff can appropriately authenticate his "compilation" as a proper representation of the totality of the scene, it must be excluded entirely.

///

### B. "Compilation" Highly Prejudicial Under FRE 403

Demonstrative evidence is physical evidence that has no independent probative value but which illustrates or demonstrates a party's testimony or theory of the case. Jones, et al, *Federal Civil Trials and Evidence* §8:600 (2014). The court has broad discretion to regulate the use of demonstrative evidence. *See* FRE 611(a), Adv. Comm. Notes; *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1429 (9th Cir. 1991). Demonstrative evidence may be excluded under if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing of issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence pursuant to FRE 403. In *Burchfield v. CSX Transp., Inc.*, 636 F.3d 1330, 1336-1338 (11th Cir. 2011) the court held that it was an abuse of discretion to admit video recreating incident without proper foundation showing substantial similarity between video and actual incident.

Here, the introducing the "compilation" will serve to distort the events at issue and will unfairly prejudice Defendant, unfairly mislead the jury and amounts to an unfair suprise. Several factors lead to this conclusion. First, the "compilation" purports to include a mere fraction of the 29 known videos introduced in this case. Video is a two dimensional medium which can distort the distances between two objects and which only provides a view of what the lens sees as opposed to a 360 representation of the scene. Mr. Schott took account of this reality in the *Grant Jr.* case by meticulously measuring the actual distances between two points on the platform. By only including a few select videos it is clear that Plaintiff made no attempt in the "compilation" to create a 360 view of the whole scene from all angles, as Mr. Schott did in *Grant Jr*. Instead, Plaintiff's "compilation" presents a stilted view of events which does not correlate at all to what Defendant saw during the protest. Unlike *Mueller* and, as the court cautioned in *Harris*, the video footage which Plaintiff seeks to use is incomplete and prejudicial and does not capture the scene as Defendant saw it.

An illustrative example of the incongruence between then videos within the compilation is at 21:18 into the compilation (17:34:11 timestamp on the BART video) a protester begins shouting "keep an eye on him" and points to the camera, but neither the protester nor what he is

20741.1

pointing at can be seen in the BART video. Therefore, by playing the BART video alongside another video the jury is left with the false impression that the compilation shows what exactly happened.

Second, the compilation includes highly prejudicial photographs that show such images as police officers in riot gear holding guns (see 17:18:48 timestamp on BART video) and are completely irrelevant to what Defendant perceived in making his decision to arrest Plaintiff. Further, the photographs do not include timestamps or any indication that they depict events contemporaneous to the point during the video at which they are displayed.

Third, Plaintiff has also overlaid BART dispatch audio onto the video. Here again the jury will be led to believe that the audio transmissions happened at these specific moments in time. Yet, Plaintiff presents no evidence that indeed the transmissions happened at these times.

Finally, Plaintiff himself, along with one of his friends, culled only a few videos i. As a result, Defendant has no assurances that Plaintiff abided professional standards for synchronizing video footage to ensure that the "compilation" accurately portrays how the protest unfolded, as well as document Plaintiff's location, actions and Defendant's response. In order to properly understand what is and what is not in this video, if allowed as a demonstrative, Defendant would be required to redepose Plaintiff and depose his friend. In addition, Defendant would need to retain an expert to create a fair representation of the totality of events as they unfolded. At this late date so close to trial, Defendant simply does not have appropriate time to do this. Even if a curative instruction were to be read to the jury to caution against the danger of taking the images depicted in the "compilation" as an accurate depiction of the scene, that would still not be enough to "unring the bell."

///
///
///
///
///
///

### IV. CONCLUSION

Therefore, for the foregoing reasons, the Court should amend its tentative ruling and exclude Plaintiff's compilation for all purposes, including as a demonstrative or illustration.

Respectfully submitted,

Dated: September 10, 2014

ALLEN, GLAESSNER,
HAZELWOOD & WERTH, LLP

By: */s/ Dale L. Allen, Jr.*
　　DALE L. ALLEN, JR.
　　KEVIN P. ALLEN
　　Attorneys for Defendant
　　BART DEPUTY POLICE CHIEF DAN HARTWIG

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

20741.1

9

OPPO.TO COURT'S TENTATIVE RULING
C12-5289 JSC (DMR)